PARMA HEIGHTS (CITY), PLAINTIFF, *v.* SCHROEDER, ETC., ET, DEFENDANTS.

Common Pleas Court, Cuyahoga County.

No. 774228.

*Mr. George W. Spanagel*, for plaintiff.
*Mr. William L. Blake*, for defendant.

248

## Statement of Facts

LYBARGER, J. At the time of trial the parties stipulated as to the facts in the case. The essentials are as follows: In November, 1959, defendants Carl A. Long and Louis J. Parker were each elected councilmen of the City of Parma Heights for a term extending from January 1, 1960 to December 31, 1963. The city ordinance prevailing at that time fixed a councilman's salary at $600 per year. June 19, 1961, council passed an ordinance which set the salary at $1200 per year, effective January 1, 1962. Long and Parker resigned as councilmen on January 2, 1962, and their resignations were accepted. This created two vacancies on the council which were immediately filled by the appointment of Long and Parker, and on January 2, 1962, the oath of office was administered to them.

Article III, Section 6, of the Charter of the City of Parma Heights (then and now in effect) provides in part:

"The salaries of all elected officials shall be fixed at least one hundred twenty (120) days prior to the date set for the municipal election for the terms beginning on the next succeeding first day of January, and shall not thereafter be changed in respect to any such term or terms or any part thereof."

The within action is brought by the Director of Law of the Plaintiff and seeks a declaratory judgment and injunction. The action was brought on demand of the Defendant Charles F. Carleton, a taxpayer of the city, who has filed a cross-petition asking for a mandatory injunction. The issue for determination is what salary should Long and Parker receive as councilmen for services between January 2, 1962 and December 31, 1963.

## Conclusions of Law

Since Parma Heights is a home rule city, determination

of the question depends on the meaning of the charter provision mentioned above and an application of established legal principles thereto.

It is clear that the salary of Long and Parker was $600 per year when they came on the council in 1960. They were council members when the ordinance raising salaries to $1200 was adopted in 1961. This raise was fixed so as to apply to terms beginning January 1, 1962.

The charter section in question says that salaries, when fixed 120 days before a municipal election for succeeding terms "... *shall not thereafter be changed in respect to any term or terms or any part thereof.*" The only interpretation to be given to the word "changed" as here used is that the charter means that salaries are not to be raised or lowered. This is in keeping with long-established constitutional principles that salaries of public officers elected for set terms may not be increased or diminished during the term for which they were elected or appointed.

The Constitution of the State of Ohio provides in Article II, Section 20:

"The General Assembly, in cases not provided for in this Constitution, shall fix the term of office and the compensation of all officers; but no change therein shall affect the salary of any officer during his existing term, unless the office be abolished."

The Supreme Court said in *State, ex rel.* v. *Raine, Auditor,* 49 Ohio St., 580 (1892):

"A statute, whatever terms it may employ, the only effect of which is to increase the salary attached to a public office, contravenes Section 20, of Article II, of the Constitution of this state, in so far as it may affect the salary of an incumbent of the office during the term he was serving when the statute was enacted."

The last phrase in the charter provision of Parma Heights, "*in respect to any such term or terms or any part thereof,*" is of particular importance in the present instance. The question of the meaning of "term of office" was dealt with by the Court of Appeals for Muskingum County in *State, ex rel. Pugh,* v. *Tanner,* 27 O. C. A., 385 (1917), wherein the court quoted a New

Jersey decision (*Board* v. *Lee*, 76 N. J. Law, 327), as follows (pg. 388):

"The words 'term of office' may, in a sense, be used to indicate the statutory period for which an officer is elected. We speak of the term of office of the President of the United States; the term of office of the Governor of the state, meaning that the first was four years and the latter three years; but the words 'term of office' may also mean a period much shorter than that for which the particular officer was elected. His term of office may be terminated before the expiration of the statutory period for which he was elected by impeachment, or resignation, or death of the particular officer. The happening of these contingencies are implied limitations upon the right of the elected officer to continue in office for the period for which he would otherwise be entitled to hold. When such a contingency occurs the officer's term expires; there is a vacancy, and upon the appointment or election to fill the vacant office, the term of another officer begins. * * * In view of the purpose of the legislation, there seems to be no question that the words 'term of office' was the term during which the then present clerk was entitled to receive compensation for his services. When Mr. Scott died it terminated his official life, and the period of his official life was his term of office. When Mr. Lee was appointed he began a new term, not as legatee of Mr. Scott, but by a distinct appointment to a vacant office."

In the *Pugh case* one *Bailey* was appointed in 1915 to a six year term on the Zanesville Civil Service Commission at $25 per year. February 1916, the salary was raised to $150 per year. Thereafter Bailey resigned and in August, 1916, the relator Pugh was appointed. The question was which salary should Pugh receive. The law is stated thus in the syllabus:

"The salary of an appointee to a vacancy in a public office is controlled by the law in effect at the time his appointment was made, and not by the law in effect at the time his predecessor was elected for the term which he is to complete."

It should be noted that the court has not found any reported case where members of a city council, in the midst of their terms, resigned and were immediately appointed to the vacancies they had created, after the council on which they

were serving had voted an increase in salaries for terms to begin at the first of the following year.

In the instant case, if after the resignation of Long and Parker the council had appointed two other citizens, call them Smith and Jones for example, the court without any hesitancy would have to say that Smith and Jones would be entitled to be paid at the new rate of $1200 per year that went into effect the day before they were appointed. The court would conclude that the period of Long's and Parker's official life was their "term of office," and that it came to an end when they resigned. When Smith and Jones, theoretically, were appointed they would have begun new terms, not as legatees of Long and Parker, "but by a distinct appointment to a vacant office," using the language of the decision quoted above.

But what of the actual situation here presented? Long and Parker were elected to serve until December 31, 1963, at $600 per year. They were on the council when it voted in June, 1961, to double this salary for councilmen taking office after January 1, 1962. In view of this situation may they legally resign as soon as the new salary rate becomes effective, then immediately be appointed to the vacancies they have created, and get the increase in salary?

The court is of the opinion that this was one of the contingencies that the Charter of Parma Heights sought to guard against,—an effort by the ordinance makers to increase their salaries "in respect to any such term or terms or any part thereof." Part of the terms of the two councilmen had two years to run. If they had resigned and retired the law would say that their terms of office had come to an end. But such was not the case, for they immediately stepped back into the shoes they had been occupying before. Long and Parker were elected to serve until the end of 1963. That was the length of their term and, as legislators in a body that had raised salaries during their term, they cannot change their status by two words, "I resign," and thereby resume their former places in council at the increased salary. Clearly one cannot do indirectly what he cannot lawfully do directly.

For the above reason the court declares that the legal and proper compensation of defendants Louis J. Parker and Carl

252

A. Long under the Charter of the City of Parma Heights, and the ordinances thereon based is $600 per year, payable $50 per month for the years 1962 and 1963.